IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BOBBY JENKINS,

    Plaintiff,

v.

    Case No. 4:23-cv-04108-JEH

KASEY KRAMER,

    Defendants.

### Order

Plaintiff, proceeding pro se and presently incarcerated at Graham Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment (Doc. 54) and Defendants' Motion to Strike (Doc. 60). For the reasons stated, *infra*, Defendants' Motion for Summary Judgment (Doc. 54) is granted, and Defendants' Motion to Strike (Doc. 60) is denied.

**I**

Defendants filed a Motion to Strike (Doc. 60), seeking a court order striking Plaintiff's sur-reply to Defendants' Motion for Summary Judgment. The local rules do not expressly permit a party to file a sur-reply to summary judgment. Plaintiff did not request leave before filing his sur-reply, but, because the Court must grant leeway to pro se litigants, Defendants' motion is denied.

To the extent that Plaintiff's sur-reply requests appointment of counsel, he did not provide any information in addition to that addressed in the Court's previous order denying such relief. *See* Text Order entered Mar. 26, 2024. Plaintiff's request is denied without prejudice for the same reasons stated in that order.

## II

### A

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B

Plaintiff was incarcerated at Hill Correctional Center. Defendants worked at the facility in the following capacities: Defendant Osmundson was a physician; and, Defendant Kramer was a nurse practitioner. Defendant Wexford Health Sources ("Wexford") was the private company contracted to provide medical services in Illinois prisons.

Plaintiff reported to medical staff on July 17, 2021, that he had injured his right shoulder while lifting weights the night before. (Doc. 54-1 at 9-10). The

medical records indicate Plaintiff reported that he had heard a "crunching noise," felt immediate pain, and that his "arm just dropped after that." *Id.* at 9. Once contacted, Defendant Osmundson directed medical staff to send Plaintiff to the emergency room and to give Plaintiff a three-week yard restriction. *Id.* at 9. The ER physician opined that Plaintiff had likely torn his rotator cuff, recommended that Plaintiff wear a sling for comfort, take Motrin as needed for pain, and follow-up with an orthopedic doctor. *Id.* at 21. Defendant Osmundson issued a permit for the sling, imposed a one-month gym and yard restriction, continued Plaintiff's Mobic prescription, and ordered a follow-up appointment upon Plaintiff's return to the prison. *Id.* at 11.

Defendant Kramer examined Plaintiff on July 20, 2021, noted a probable rotator cuff injury, and referred Plaintiff for an MRI. *Id.* at 12. Defendant Wexford officials approved the procedure on July 28, 2021. *Id.* at 13. An MRI conducted October 11, 2021, disclosed:

IMPRESSION:

1. Full-thickness tear of the distal supraspinatus tendon with additional features of rotator cuff tendinosis…There is a retraction of the supraspinatus tendon from the greater tuberosity of about 0.7 cm.
2. Advanced AC joint arthritis with impingement.
3. Degenerative fraying and tearing with some volume loss of portions of the labrum.

*Id.* at 69. Defendant Kramer referred Plaintiff for an orthopedic consultation on October 27, 2021. *Id.* at 30.

The orthopedic specialist at Cottage Ortho recommended surgery following an examination conducted on December 21, 2021. *Id.* at 32. Defendants approved

the recommendation and scheduled Plaintiff's surgery for January 20, 2022. *Id.* at 30.

On or about December 28, 2021, the orthopedic specialist referred Plaintiff to a specialist at OSF Orthopedics. *Id.* at 66-67. According to the referral, Cottage Hospital had canceled the surgery until further notice. *Id.* at 67. Cottage Hospital closed unexpectedly in January 2022.

The specialist at OSF Orthopedics recommended non-surgical treatment including subacromial steroid injections, a strengthening program, and a follow-up appointment in eight weeks following his April 7, 2022, examination. *Id.* at 34. Plaintiff received a steroid injection and a conditioning program the same day. *Id.* at 38-47. The injection, according to Plaintiff, temporarily reduced his pain for a couple weeks. *Id.* at 48.

Plaintiff reported continued pain with overhead activities, a level of pain severe enough to wake him up at night, and "radiating symptoms from his neck down into his arm" during follow-up appointments conducted June 27, 2022, and August 29, 2022. *Id.* at 48, 51. An MRI conducted August 24, 2022, disclosed:

> FINDINGS:
>
> Acromioclavicular joint: Advanced osteoarthritis with inferior osteophytes.
>
> Acromion: Unremarkable.
>
> Subacromial/subdeltoid bursa: Trace fluid
>
> Rotator cuff:
>
> Full thickness tear of the supraspinatus tendon from the anterior most insertial fibers measuring approximately 14 x 16 mm in anterior-posterior by medial-lateral dimensions respectively. Subscapularis, teres minor and infraspinatus tendons are intact.

Long head of biceps tendon: High-grade partial-thickness versus…[1] *Id.* at 62. The specialist independently reviewed the MRI results and found that the tear in Plaintiff's supraspinatus tendon "slightly increased in size compared to old MRI. High-grade partial thickness versus full-thickness long head biceps tendon tear, AC joint arthritis, nondisplaced posterior labral tear versus degenerative changes." *Id.* at 59. The specialist recommended surgery and referred Plaintiff to the appropriate specialist. *Id.* at 60. The third specialist recommended surgery following an examination conducted November 6, 2022. *Id.* at 70-72. Plaintiff underwent surgery without complications on April 26, 2023. *Id.* at 77-79.

Defendants provided ibuprofen and renewed his lower bunk permit on several occasions throughout the relevant period. (Doc. 61-2 at 229, 233, 237, 241, 245, 255, 265, 269, 273, 277, 281, 285, 289, 293, 301). Defendants provided muscle rub upon Plaintiff's request in October 2022. (Doc. 61-2 at 18, 275). The records do not disclose that Plaintiff reported that the pain medications were ineffective.

C

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

---

[1] The MRI report provided indicates that it is page 1 of 2. The parties did not provide the second page.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Defendants sent Plaintiff to the emergency room shortly after the injury occurred, prescribed pain medications and other devices/permits to mitigate the pain, referred Plaintiff for diagnostic testing, pursued specialized treatment, and followed each specialists' recommendations. Defendants were not responsible for the delay resulting from Cottage Hospital's unexpected closure. *Vance v. Peters*, 97

F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

The second specialist's recommendation for injections and an exercise program arguably delayed Plaintiff's surgery. Notwithstanding the previous recommendations, Defendants' decision to approve this treatment does not permit an inference that they acted with deliberate indifference as nothing suggests the second specialist was unqualified or that the recommendation substantially deviated from acceptable treatment. *Shields v. Ill. Dep't. of Corrs.*, 746 F.3d 782, 797 (7th Cir. 2014) ("[C]hoosing one treatment recommendation over another does not amount to deliberate indifference where both recommendations are made by qualified medical professionals."). There is no evidence that Defendants influenced any of the specialists' recommendations, and they did all they could to move treatment forward under the circumstances. *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019) (doctor who facilitated treatment to the extent possible was not deliberately indifferent despite the delays).

The medical records do not disclose that Plaintiff reported that the pain medication Defendants provided during this time was ineffective or that the specialists had recommended different medication. The second MRI disclosed that the tear in Plaintiff's tendon had slightly worsened, but the record lacks evidence that this resulted from Defendants' actions, rather than the underlying condition itself. *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."). The record does not disclose that Plaintiff suffered any surgery-related complications arising from any delay.

The record does not permit a reasonable inference that Defendants failed to exercise the requisite medical judgment or that a Wexford policy caused any alleged constitutional deprivation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's constitutional rights.

**Therefore:**

1) **Defendants' Motion to Strike [60] is DENIED.**

2) **Defendants' Motion for Summary Judgment [54] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.**

*It is so ordered.*

Entered: July 17, 2025

s/Jonathan E. Hawley
U.S. District Judge

8